IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MONROE GUARANTY INSURANCE COMPANY AND FCCI INSURANCE COMPANY<br><br>*Plaintiff*,<br><br>vs.<br><br>TEXAS SIGMA PARTNERS, L.L.C., STEVE RYAN HAWKINS, HAWK LITTER SERVICE, L.L.C., and AMERICAN TERMINAL EXPORT CO., INC.<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.: _______________ |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

COME NOW Plaintiffs MONROE GUARANTY INSURANCE COMPANY ("Monroe Guaranty") and FCCI INSURANCE COMPANY ("FCCI") (collectively referred to as "Insurers"), and states as follows for their Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure 57 and 28 USC §§ 2201 and 2202 against Defendants TEXAS SIGMA PARTNERS, LLC, STEVEN RYAN HAWKINS, HAWK LITTER SERVICE, L.L.C., and AMERICAN TERMINAL EXPORT CO., INC.

## I. PARTIES AND JURISDICTION

1. Plaintiff Monroe Guaranty is incorporated in Indiana with its principal place of business in Florida, and is therefore a citizen of Indiana and Florida.

2. Plaintiff FCCI is incorporated and has its principal place of business in Florida, and is therefore a citizen of Florida.

3. Defendant Texas Sigma Partners, LLC ("Texas Sigma") is a limited liability company organized and existing under the laws of Texas, with its principal place of business is located at 400 All Star Dr., Winnsboro, Texas 75494. Upon information and belief, all of the members are Texas residents, and thus Texas Sigma is a citizen of Texas. Defendant Texas Sigma may be served with summons and complaint by serving its registered agent for service of process, Ryan Hawkins, at his place of business located at 400 All Star Dr., Winnsboro, Texas 75494, his alternative address located at 400 All Star Dr., Greenville, Texas 75404, his alternative address at 6285 C.R. 1410, Bogata, Texas 75417, or wherever he may be found.

4. Defendant Steven Ryan Hawkins ("Hawkins") is an individual who is a Texas resident and citizen and may be served at his place of business located at 400 All Star Dr., Winnsboro, Texas 75494, the alternative address of 500 All Star Dr., Winnsboro, Texas 75494, the alternative address of 6285 County Road 1416, Bogata, Texas 75417, or wherever he may be found.

5. Defendant Hawk Litter Service, LLC ("Hawk Litter") is a Texas-domestic limited liability company organized and existing under the laws of Texas, whose principal place of business is located at 6285 County Road 1410, Bogata, Texas 75417, and is authorized to do business in Texas. Upon information and belief, all of the members are Texas residents, and thus Hawk Litter is a citizen of Texas. Defendant Hawk Litter may be served with summons and complaint by serving its registered agent for service of process, Ryan Hawkins, 6285 County Road 1410, Bogata, Texas 75417, the alternative address of 2547 County Road 1416, Bogata, Texas 75417, or wherever he may be found.

6. American Terminal & Export Co., Inc. ("American Terminal") is incorporated in Texas with its principal place of business in Galena Park, Texas, and is therefore a Texas citizen.

It may be served by serving its registered agent, Thomas Tom McKernan, 903 Mayo Shell Road, Galena Park, TX 77547, or wherever he may be found.

7. As plaintiffs are citizens of Indiana and Florida, and not Texas, and defendants are citizens of Texas, and not Indiana or Florida, there is complete diversity of citizenship between parties.

8. Defendants have been sued in Cause No. 2022-187, *Brandy Embrey, et al. v. Texas Sigma Partners, LLC, et al.,* In the 402nd Judicial District of Wood County, Texas (the "Underlying Lawsuit"). This is a dispute over coverage for the allegations in that suit.

9. The amount in controversy exceeds $75,000.00.

10. This Court has subject matter jurisdiction under 28 U.S.C. §1332.

## II. VENUE

11. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) as at least one Defendant resides in this judicial district and/or 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise the claim against Insurers and the Underlying Lawsuit against defendants is pending in this judicial district.

## III. FACTS

12. Insurers bring this claim for declaratory judgment under both Federal Rules of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202.

13. Monroe Guaranty issued its Policy Number CPP100071839-00 to the named insured, Texas Sigma, for the policy period of July 23, 2021 to July 23, 2022 (the "Primary Policy").[1] The Primary Policy provides commercial general liability coverage policy limits of $1

[1] A copy of the Primary Policy, with premium redacted, is attached hereto as Exhibit "A."

Million per occurrence and $2 Million in the aggregate with a $5,000 per occurrence property damage deductible.

14. FCCI issued its Policy Number UMB100071841-00 to the named insured, Texas Sigma, for the policy period of July 23, 2021 to July 23, 2022 (the "Umbrella Policy").[2] The Umbrella Policy provides $5 Million aggregate umbrella coverage over and above the Primary Policy.

15. On April 25, 2022, the Underlying Lawsuit[3] was filed by twenty-eight (28) plaintiffs against Texas Sigma, Sigma Agriscience, Hawkins, Hawk Litter, and American Terminal. Thereafter, on September 27, 2022, plaintiffs in the Underlying Lawsuit filed their First Supplemental Original Petition;[4] this supplemental petition was identical to the Original Petition in the Underlying Lawsuit in all respects, but adding ten (10) additional plaintiffs. A Second Supplemental Original Petition was filed on March 9, 2023.[5]

16. In the Underlying Lawsuit, the underlying plaintiffs allege that, in June, 2021, Texas Sigma began operating a plant to manufacture organic granular fertilizer (the "Plant") in violation of the State of Texas' environmental laws. Further, the underlying plaintiffs allege that they complained of noxious odors and smoke and pollution emanating from Texas Sigma dating back to June 2021. Plaintiffs allege that, since June 2021, the odors, smoke, pollution and smoke from fires in the drying kiln have become increasingly worse. The fires, however, all remained within the drying kiln. (*See* Exhibits "C", "D," and "E," including attached and incorporated exhibits thereto.)

---

[2] A copy of the Umbrella Policy, with premium redacted, is attached hereto as Exhibit "B."
[3] A copy of the Original Petition is attached hereto as Exhibit "C."
[4] A copy of the First Supplemental Original Petition is attached hereto as Exhibit "D."
[5] A copy of the Second Supplemental Original Petition is attached hereto as Exhibit "E."

17. Monroe and FCCI denied coverage based upon various policy terms, conditions and exclusions of the policy.

## IV. POLICIES

18. Plaintiffs incorporate and reallege the preceding paragraphs 1-17 as though fully set out here.

**A. The Primary Policy**

19. The Primary Policy includes, as insureds, the following:

> 1. If you are designated in the Declarations as:
>
> * * *
>
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your manager.

S. Ryan Hawkins was a managing member of Texas Sigma, upon its formation and until August 28, 2020. At that time, Hawk Litter Service, LLC and American Terminal Export Co., Inc., became managing members. There are no specific allegations against these entities, in their capacity as managing members, but there are allegations that all defendants are "participatorily liable." Accordingly, they are included to allow complete relief.

20. The Primary Policy's insuring clause provides, in pertinent part:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> * * *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> * * *
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. Of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the

policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

* * *

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

21. The Primary Policy also includes several applicable exclusions, including the Expected or Intended Injury Exclusion, the Pollution Exclusion, and the Personal and Advertising Injury Exclusion. The Primary Policy's relevant exclusions state, in pertinent part:

2. Exclusions

This insurance does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

* * *

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, rented or loaned to, any insured. However, this subparagraph does not apply to:

* * *

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

      (ii) Any person or organization for whom you may be legally responsible;

* * *

o. Personal And Advertising Injury
"Bodily injury" or "property damage" arising out of "personal and advertising injury".

22. The Policy incorporates various definitions, including the following terms:

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

* * *

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Ex. A, Primary Policy, Section V-Definitions (7), (14), and (15).

**B. The Umbrella Policy.**

23. Like the Primary Policy, the Umbrella Policy includes members and managers of an LLC as insureds, solely for conduct in that capacity.

24. The Umbrella Policy's Section I, Coverage A – Bodily Injury and Property Damage Liability insuring clause likewise incorporates the Known Loss/Loss in Progress doctrines. Specifically, the insuring agreement provides, in pertinent part,:

1. Insuring Agreement
   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

* * *

   **c.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** --- - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

**e.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** -- - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

25. The Umbrella Policy also includes various applicable exclusions. These exclusions include the Expected or Intended Injury Exclusion and the Pollution Exclusion. These exclusions preclude coverage as follows:

2. Exclusions

This insurance does not apply to:

a. Expected or Intended Injury

“Bodily injury” or “property damage” expected or intended from the standpoint of the insured. This exclusion does not apply to “bodily injury” resulting from the use of reasonable force to protect persons or property.

* * *

i. Pollution

(1) “Bodily injury” or “property damage” which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of “pollutants” at any time; or

(2) “Pollution cost or expense”.

> This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

26. The Umbrella Policy includes the following definitions germane to this Complaint.

> SECTION V-DEFINITIONS
>
> * * *
>
> 15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
> 16. "Pollution cost or expense" means any loss, cost or expense arising out of any:
>     a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
>     b. Claim or suit . . .

27. Based on the provisions of the Primary Policy and the Umbrella Policy, the Underlying Lawsuit fails to state a claim within the policies' insuring clauses because the insured allegedly knew of the alleged damages prior to the policies' inception date.

28. In addition, even if a claim within the insuring agreements is alleged, the factual allegations fall within the Expected or Intended Injury Exclusion and the Pollution Exclusions. Accordingly, no defense obligation is triggered. Further, because the same facts that negate defense also negate indemnity, there can be no indemnity obligation under either policy, as a matter of law.

## V. BASIS FOR DECLARATORY RELIEF

29. Insurers incorporate and reallege the preceding paragraphs 1-28 as though fully set out here.

30. 28 U.S.C. §2201 permits courts to declare the rights and other legal relations of any interested party seeking such declaration in cases of actual controversy within its jurisdiction. 28 U.S.C. §2202 and this Court's inherent powers of equity permit this Court to award further necessary relief based on a declaratory judgment or decree.

31. The Underlying Lawsuit alleges and asserts noxious odors, smoke and pollution dating back to June 2021, which is before the Primary Policy's and the Umbrella Policy's commencement date. Because the Underlying Lawsuit's allegations and incorporated exhibits allege the insured's knowledge prior to the policies' effective dates, there can be no coverage within the scope of the policies' insuring clauses.

32. The Underlying Lawsuit and its attached and incorporated exhibits allege and assert Defendants' operation of the Plant in disregard of the Texas Commission on Environmental Quality's ("TCEQ") notice of violation and without scrubbers, and plaintiffs' allegations of Defendants' "intentional" conduct and conduct done with "subjective awareness of the risk involved but nevertheless proceeded with conscience indifference to the rights, safety or welfare of others," and conduct which "was intentional, . . . Defendants had knowledge that their actions were practically certain to have the effects complained of." Thus, the underlying plaintiffs allege that Defendants should have reasonably expected and/or intended the resulting alleged injuries and damages, implicating the exclusion.

33. The Underlying Lawsuit and its attached and incorporated exhibits abundantly allege injury or damage purportedly resulting from the actual or alleged discharge, dispersal, seepage, migration, release or escape of pollutants, including "noxious odors," "smoke,"

"emissions," "steam," "contaminants," "polluted," "suspended solids," "dangerous pathogens," "polluting the environment," "industrial waste," "water pollution," and "toxic substances emitted." Accordingly, the Primary Policy's and the Umbrella Policy's Pollution Exclusions preclude coverage for the Underlying Lawsuit.  Further, the Underlying Lawsuit and its attached and incorporated exhibits allege that any fire which may have occurred stayed within the drying kiln, it did not become uncontrollable and did not break out from the drying kiln.  Thus, no "hostile fire" occurred.

34. Accordingly, Insurers seek a declaration from this Court that they have no duty to defend or indemnify Defendants in the Underlying Lawsuit

## VI. PRAYER

WHEREFORE, Plaintiffs, MONROE GUARANTY INSURANCE COMPANY and FCCI INSURANCE COMPANY, pray that this Original Complaint for Declaratory Judgment be served upon the Defendants to this action; and after due proceedings are had, that there be a declaratory judgment entered in favor of Plaintiffs declaring:

(a) That the Underlying Lawsuit does not trigger the coverage for Bodily Injury and Property Damage of the Primary Policy and/or the Umbrella Policy;

(b) That the damages sought in the Underlying Lawsuit are not covered under the Primary Policy and/or the Umbrella Policy based on the Expected or Intended Injury Exclusions within the policies' Coverage A for Bodily Injury and Property Damage Coverage;

(c) That the damages sought in the Underlying Lawsuit are not covered under the Primary Policy and/or the Umbrella Policy based on the Pollution Exclusions within the policies' Coverage A for Bodily Injury and Property Damage Coverage; and

(d) That Plaintiffs be awarded such other and further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ *Beth D. Bradley*
Beth D. Bradley
Texas Bar No. 06243900
bethb@tbmmlaw.com
Suzanne A. Schlicher
Texas Bar No. 02601800
suzannes@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Telephone: 214-665-0100
Facsimile: 214-665-0199

**COUNSEL FOR PLAINTIFFS, MONROE GUARANTY INSURANCE COMPANY AND FCCI INSURANCE COMPANY**